AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  **21mr773** |
| ONE BLUE LG CELLPHONE. | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See the attached affidavit of HSI Special Agent Eric Millard, which is incorporated by reference and has been reviewed and approved by AUSA Shana Long.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Eric A. Millard, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephonically sworn and electronically signed__ *(specify reliable electronic means)*.

Date: ____06/07/2021____

_____
*Judge's signature*

City and state: Albuquerque, New Mexico

Hon. Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF, ONE BLUE LG PHONE, ONE BLUE LG PHONE WITH A BLACK HOLDER, ONE SILVER LG PHONE, AND ONE BLACK SAMSUNG PHONE BEARING IMEI 352082506229162. | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Eric Andrew Millard, Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property— four electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.  For the reasons stated herein, I believe there is probable cause to conclude that the electronic devices at issue contain records or information that will be evidence of or relating to violations of 21 U.S.C. §§ 841, that being possession with intent to distribute heroin and methamphetamine (both Schedule I controlled substance).

2.     I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrest for, the offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code and other related offenses.

1

3.     I am a Special Agent ("SA") with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), in Albuquerque, New Mexico, and have been employed as such since February 2019. Prior to my employment with HSI, I was a U.S. Border Patrol Agent for over nine years. Prior to my Department of Homeland Security career, I served in the U.S. Air Force as a Staff Sergeant, a non-commissioned officer rank, as a Security Forces member, the U.S. Air Force equivalent of Military Police.

4.     I successfully completed over 25 weeks of training at the Federal Law Enforcement Training Center in Brunswick, Georgia, to include the Criminal Investigator Training Program, and the Immigration and Customs Enforcement Special Agent Training Course. I hold dual Bachelor of Science degrees in Psychology and Criminal Justice and Criminology from Arizona State University, as well as a Master of Arts in National Security Studies, with a concentration in Homeland Security, from American Military University.

5.     I have received extensive training and practical experience pertaining to federal criminal procedure, federal criminal statutes, United States immigration and nationality law, United States customs laws and regulations, and other federal and state laws, including but not limited to alien smuggling, human trafficking, fraudulent document manufacture and sales, the importation and distribution of controlled substances, firearms, commercial fraud, counter-proliferation investigations, and conspiracy.

6.     I have also acquired knowledge and information about such offenses, and the various means and methods by which they are furthered, from numerous sources, including formal and informal training from other law enforcement officers, investigators, and Special Agents; interviews of informants and arrestees; and interviews of other knowledgeable individuals.

2

7.   Through my training and experience, I have learned that:

a.   Drug traffickers often store names, addresses, telephone numbers, email addresses, or other pertinent codes and or contact information for their current or past illegal drug source(s) of supply, customers, or criminal associates in the electronic memory of their wireless telephones, tablets, digital cameras, portable media players, and personal digital assistants ("PDAs").

b.   Drug traffickers often store photographs of drugs, vehicles, locations, or drug associates in the electronic memory of their wireless telephones, tablets, digital cameras, portable media players, and PDAs.

c.   Drug traffickers often communicate with their illegal drug source(s) of supply, customers, or criminal associates through text message, wireless telephone application, and/or email from their wireless telephones, tablets, portable media players, and PDAs.  Accordingly, pertinent communications are often stored in the electronic memory of wireless telephones, tablets, portable media players, and PDAs.

d.   Drug traffickers must maintain and have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business.  As such, they often store bank account information, drug ledgers, or lists of where assets are stored in the electronic memory of wireless telephones, tablets, digital cameras, portable media players, and PDAs.

e.   Drug traffickers often make use of multiple wireless telephones and other electronic devices, such as tablets, in an effort to thwart law enforcement detection.  They

3

believe that spreading communications over multiple devices will make it more difficult for law enforcement to intercept their communications.

f.  Drug traffickers, like many other people in today's digital society, make use of computers and tablets to conduct their business. Like other people, drug traffickers need ready access to their important records that are stored electronically. These records can include ledgers of money paid and owed, customer lists, names and contact information of co-conspirators and associates, and photographs and videos displaying drugs in the trafficker's possession. Many people in today's society, including drug traffickers, make use of portable computer drives, commonly referred to as USB drives, flash drives, or thumb drives, to access important records when using a computer.

g.  Those engaged in the transportation of drugs will often be given an address where the drugs are to be picked up and where the drugs are to be delivered. In many instances, the drug transporter is not familiar with these addresses and is being paid to act as a courier between two locations. In these circumstances, I believe that couriers use the same methods that any other person would use to locate an unfamiliar address. These methods would include, but are not limited to, using mapping programs contained within wireless telephones or tablets, and/or programming the address into GPS navigation devices.

h.  It is important for agents to not only seize evidence of the crimes at issue, but to also seize any evidence that could demonstrate to whom the evidence can be attributed. I know from my training and experience that electronic devices can be used by multiple individuals. Oftentimes, friends, family members, co-

4

conspirators, and/or associates will all make use of the same electronic device. For this reason, it is necessary to seize any information since the inception of the device's use that could demonstrate who has possessed the device, who has used the device, and/or who has created the records, information, or evidence that could establish violations of the statutes listed herein.

8.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

9.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.


## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

10.     The property to be searched is:

a.   One blue LG cellphone bearing LG 5G printed on back, hereinafter referred to as **"LG Device 1"**,

b.   One blue LG cellphone with black holder, also referred to as a "pop socket", hereinafter referred to as **"LG Device 2"**,

c.   One silver LG cellphone bearing the word "Scosche" on the back along with the words "Hoodlum Loko" etched on it, hereinafter referred to as **"LG Device 3"**, and

d.   One black Samsung phone bearing IMEI 352082506229162, hereinafter referred to as **"Samsung phone."**

11.     Collectively, the four devices above will be referred to as the **Subject Devices**. The **Subject Devices** are located at the HSI Albuquerque field office located at 5441 Watson Drive SE, Albuquerque, NM.

12.     The applied-for warrant would authorize the forensic examination of the **Subject Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

13.     On Wednesday, March 18, 2020, the HSI Tip Line received information concerning subject Julio CARO.  The information stated CARO was residing at 1027 Archuleta Ct SE, Los Lunas NM 87031 and selling narcotics from the residence.  The narcotics being sold reportedly included methamphetamine, fentanyl pills, and heroin.

14.     A query of law enforcement databases and indices revealed that CARO, year of birth 1978, is a convicted felon.  On April 30, 2014, CARO was sentenced to 78 months imprisonment for his convictions for violating 21 U.S.C. § 846, conspiracy to distribute a controlled substance, and 21 U.S.C.  §§ 8419(a)(1) and (b)(1)(B), possession with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, in *United States v. Julio Caro*, 12-CR-2006 RB.

15.     Your Affiant researched CARO's status in the United States and determined he was an illegal alien.  Your Affiant obtained the alien file for CARO and observed, following his criminal convictions for drug trafficking in 2014, CARO had been classified as an aggravated felon in 2017 by Immigration and Customs Enforcement ("ICE").  On February 8, 2018, CARO was ordered removed by an immigration judge, and on February 21, 2018, in accordance with Section 212 of the Immigration and Naturalization Act, was found permanently inadmissible or excludable.  On March 24, 2018, CARO was deported from the U.S. to Mexico via the El Paso, TX port of entry.

16.     On November 19, 2020, your Affiant interviewed an associate of CARO who was observed departing 1027 Archuleta Ct SE, Los Lunas, NM that evening in a bronze-colored Ford F-150 bearing NM license plate ANW R07. The associate stated he had recently purchased heroin at the residence. During the interview, the associate and his companion admitted to Officers of the Los Lunas Police Department ("LLPD") that narcotics were in the vehicle.

17.     On December 1, 2020, Officers of the LLPD received a New Mexico state search warrant approved by the 13th District Attorney's Office for the Ford F-150 bearing NM plate ANW R07. On December 2, 2020, LLPD Officers searched the vehicle and found one (1) gram of black tar heroin.

18.     On January 15, 2021, a source who is known to provide reliable information to law enforcement for profit stated they regularly meet with CARO at 1027 Archuleta CT SE to purchase heroin from him.

19.     On April 4, 2021, your Affiant obtained an arrest warrant for Julio CARO for the offense of 8 U.S.C. 1326(a) and (b)(2), Reentry of a Removed Alien. On Friday, May 14, 2021, HSI Special Agents and ICE Officers encountered CARO at 1300 Parkview Dr, Los Lunas, NM 87031 and executed the warrant for CARO's arrest. During a search of CARO's person incident to his arrest, Agents and Officers uncovered and seized eight (8) grams of methamphetamine and (9) grams of heroin from CARO.

20.     Agents and Officers also a conducted a search of the vehicle in which CARO was encountered as a passenger during his arrest and observed three (3) cellular phones within his reach. The search incident to CARO's arrest revealed a fourth cellphone. CARO stated all four (4) phones belonged to him. Following CARO's arrest, Agents and Officers seized from CARO

the four phones which were described as a blue LG cellphone, a blue LG cellphone with a black case, a silver LG cellphone, and a black Samsung cellphone.

21.     Based on my training and experience, I know that people who transport controlled substances often collect the controlled substances at locations they are unfamiliar with and must often deliver them to other locations with which they are not familiar. I know that these individuals are often given strict timetables and schedules for their trips. I know that they will often rely on Global Positioning Systems ("GPS") to guide them to the locations where they are to pick up the controlled substances and provide them with efficient routes in order to reach their final destinations on schedule. I know that smart devices such as the **Subject Devices** can be used with a variety of GPS and navigation programs, which provide users with directions to and from specific locations—to include flight pattern instructions that enable air travel. Therefore, I believe the **Subject Devices** may show the location CARO regularly frequents to receive the narcotics he reportedly later resells for profit.

22.     Based on my training and experience, I know that individuals involved in trafficking controlled substances often use their wireless phones and tablets to communicate with each other regarding their crimes. These individuals can use their wireless telephones and tablets to communicate through telephone calls, text messages, e-mails, and through mobile applications such as Facebook Messenger, WhatsApp, Kik Messenger, Instagram, Snapchat, and others. I know that these individuals often document their co-conspirators as contacts in their wireless telephone's contact list or phonebook and document activities such as meetings, deliveries, and payments in their phone's or tablet's calendar or notepad application. I know that these individuals often use their wireless phones or tablets to access their bank accounts and interact with funds that were derived from their criminal activities as well as to transfer those funds using applications

8

such as Zelle, Quickpay, PayPal, Venmo, and others.  I know that individuals will often use the GPS capabilities of their wireless telephones or tablets to guide them to locations at which they engage in their criminal activities.  For these reasons, I believe the **Subject Devices** likely contain evidence of CARO's drug trafficking activities.

23.    Based on the above-mentioned details, I believe the **Subject Devices** likely contain information relating to violations of 21 U.S.C. §§ 841.  The information may include details on how and where CARO obtained the seized illegal drugs, where the seized drugs were destined, where additional evidence may be located, who assisted CARO in obtaining the seized drugs, who supplied the drugs, and whether there was an intended recipient of the drugs.  This information could include, but is not limited to:

    a.  Lists of customers and related identifying information;

    b.  Types, amounts, and prices of drugs trafficked, as wells as dates, places, and amounts of specific transactions;

    c.  Photographs or videos of the drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds;

    d.  Photographs, videos, and/or messages involving or about firearms and ammunition;

    e.  Messages, notes, correspondence, and/or communications between drug trafficking sources, customers, associates, and/or co-conspirators;

    f.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    g.  Any information recording CARO's schedule or travel dating from the HSI Tip Line information provided on March 18, 2020 to the present; and

       h.  All bank records, checks, credit card bills, account information, and other financial

           records.

24.    The **Subject Devices** are currently in the lawful possession of HSI at 5441 Watson

Drive SE, Albuquerque, NM.   As described above, they came into the possession of HSI

subsequent to the search of the reachable area immediately accessible to CARO in the vehicle he

was occupying during his arrest, following a search of his person incident to his arrest.   In my

training and experience, I know that the **Subject Devices** have been stored in a manner in which

their contents are, to the extent material to this investigation, in substantially the same state as they

were when the **Subject Devices** first came into the possession of HSI.

## TECHNICAL TERMS

25.    Based on my training and experience, I use the following technical terms to convey

the following meanings:

       a.  Wireless telephone:   A wireless telephone (or mobile telephone, or cellular

           telephone) is a handheld wireless device used for voice and data communication

           through radio signals.   These telephones send signals through networks of

           transmitter/receivers, enabling communication with other wireless telephones or

           traditional "land line" telephones.   A wireless telephone usually contains a "call

           log," which records the telephone number, date, and time of calls made to and from

           the phone.   In addition to enabling voice communications, wireless telephones offer

           a broad range of capabilities. These capabilities include: storing names and phone

           numbers in electronic "address books;" sending, receiving, and storing text

           messages and e-mail; taking, sending, receiving, and storing still photographs and

           moving video; storing and playing back audio files; storing dates, appointments,

and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another

11

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by devices that access the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some devices have static—that is, long-term—IP addresses, while other devices, particularly mobile devices, have dynamic—that is, frequently changed—IP addresses.

h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

26.  Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications, available online at

13

https://www.lg.com/ (for **LG Devices 1, 2, and 3**) and https://www.samsung.com/us/ (for the **Samsung phone**), I know that the **LG Devices 1, 2, and 3** and the **Samsung phone** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and/or tablet, and to access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

28.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Devices** were used, the purpose of that use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on **the Subject Devices** because:

> a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
>
> b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

14

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30.     *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the

Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31.     I submit that this affidavit supports probable cause for search warrants authorizing

the examination of the **Subject Devices** described in Attachment A to seek the items described in

Attachment B.

32.     AUSA Shana Long reviewed and approved this affidavit.


                                        Respectfully submitted,


                                        Eric Millard
                                        Special Agent
                                        Homeland Security Investigations



        Telephonically sworn and electronically signed
        on June 7, 2021:


        Hon. Laura Fashing
        United States Magistrate Judge


                                        16

**ATTACHMENT A**

The property to be searched is One blue LG cellphone bearing LG 5G printed on back in a DHS Self-Sealing Evidence bag # A3092393. This Device is currently located in evidence at 5441 Watson Drive SE, Albuquerque, NM.

This warrant authorizes the forensic examination of this device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records and information on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841 including:

   a.   data and information identifying co-conspirators, customers, and suppliers;

   b.   communications between co-conspirators, customers, and suppliers;

   c.   data and information regarding the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d.   data and information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e.   photographs and/or videos;

   f.   financial records or other information regarding the expenditure or disposition of proceeds from the distribution of controlled substances including all bank records, checks, credit card bills, account information, and other financial records; and

   g.   records of travel.

2.      Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

21

instrumentalities described in this warrant.  The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law

enforcement officers and agents, attorneys for the government, attorney support staff, and

technical experts.  Pursuant to this warrant, the HSI may deliver a complete copy of the seized or

copied electronic data to the custody and control of attorneys for the government and their

support staff for their independent review.